ROCKEFELLER PURCHASING CORPORATION, Respondent, *v.* ROCKE-FELLER CENTER, INC., Appellant.

First Department, December 13, 1935.

*John A. Kelly* of counsel [*F. Trowbridge vom Baur* with him on the brief; *Milbank, Tweed, Hope & Webb,* attorneys], for the appellant.

*Harry H. Oshrin* of counsel [*Nathan Stieglitz* with him on the brief], for the respondent.

GLENNON, J.   This appeal presents a question as to the sufficiency of the allegations contained in an amended complaint which was served pursuant to the permission granted by this court on the affirmance of an order dismissing a prior complaint.   (245 App. Div. 704.)

In its prayer for relief the plaintiff demands a judgment against the defendant that the latter be enjoined from interfering with plaintiff in taking possession of certain premises and also from discontinuing or withholding the listing of plaintiff's name on the bulletin board in the building wherein the premises are located.   The effect of the holding at Special Term and in this court upon the prior appeal was, that plaintiff was not entitled upon the facts pleaded in the original complaint to equitable relief since it had an adequate remedy at law.

We do not believe that the amended complaint spells out a cause of action which would entitle the plaintiff to relief upon the equity side of the court.   The additional allegations which are set forth in paragraphs nineteenth, twentieth, twenty-first and twenty-second fall far short of indicating that the plaintiff is entitled to the judgment of injunction which it sought, or even to specific performance.

It appears that one Isidore Mitchell on the 30th day of January, 1935, entered into an agreement of lease with the appellant, Rockefeller Center, Inc. Under its terms which are to be found in the twenty-ninth paragraph, the appellant as landlord consented " to the assignment of this lease by the tenant to a stock corporation to be duly organized under the laws of the State of New York." Thereafter, Mitchell assigned all his right, title and interest in the lease to the respondent, Rockefeller Purchasing Corporation. When this corporation came into being, whether before the 30th day of January, 1935, or later does not appear. It is sufficient to say, however, that the appellant has refused to give possession to the respondent apparently because of its corporate name. Whether or not the respondent was organized for the purpose of deceiving the public and leading its patrons to believe that it was in some way connected with the appellant, Rockefeller Center, Inc., is a matter which should be given consideration in determining whether or not equitable relief should be ultimately granted. The new allegations which are to be found in the nineteenth and twentieth paragraphs indicate quite clearly that it is the purpose of the respondent in the use of its name to take an unfair advantage in trading with the public, of the name " Rockefeller " in connection with its business. These paragraphs read as follows:

" *Nineteenth.* Upon information and belief that the use and occupation by the plaintiff of the premises described in the aforementioned lease are of peculiar and particular benefit and advantage to the plaintiff in that said leasehold premises are located in a building which would give the plaintiff certain benefits which would not otherwise readily be obtainable by it in any other building or buildings.

" *Twentieth.* Upon information and belief that such benefits consisted of a transient patronage of a large number of local people and patrons attracted to Rockefeller Center, by reason of its fame and reputation, which would in turn afford the plaintiff large opportunities for business or trading with such persons which would not otherwise exist in any other location."

We have been unable to find a reported case in this or any other jurisdiction where equity took the possession of real estate from one party and gave it to another by mandatory injunction. Neither the respondent nor its assignor, Isidore Mitchell, has ever been in possession of the premises. In 1 McAdam on Landlord and Tenant (5th ed.) we find the following legal principles stated at page 431: " Equity will not take the possession of real estate from one party and give it to another by mandatory injunction. Where a tenant is denied possession by his landlord he has a full and adequate

remedy at law either in ejectment, or it would seem by summary proceedings under the Civil Practice Act, or by an action for damages in which the tenant can recover not only the difference between the rent reserved and the actual rental value of the premises for the stipulated term, but also such other proximate damages as naturally would flow from the refusal of the landlord to give possession under the covenants of the lease." This statement finds support in a decision of this court in *Koenig* v. *Eagle Waist Co., Inc.* (176 App. Div. 726).

It follows, therefore, that the order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion to dismiss the amended complaint granted, with ten dollars costs.

MARTIN, P. J., MERRELL and TOWNLEY, JJ., concur; UNTERMYER, J., dissents and votes for affirmance.

UNTERMYER, J. (dissenting). The jurisdiction of equity specifically to enforce contracts relating to real estate, even where there exists a concurrent right of action for damages at law, has been too long exercised and is too well established to admit of argument. That jurisdiction extends to contracts for leases in common with other estates in land (Pomeroy Specific Performance of Contracts [3d ed.], § 9, and authorities cited in note a) and was directly sustained by this court in *Shea* v. *Keeney* (155 App. Div. 628). Indeed it would lead to serious consequences if long term leases could not be so enforced.

If this were strictly an action for specific performance I think there could hardly exist any doubt that it could be maintained. The fact that instead the plaintiff has demanded an injunction does not change the situation. If the plaintiff is entitled to a decree requiring the defendant to specifically perform the lease, it should certainly be entitled to the lesser remedy for which it asks. Instead of commanding the landlord to specifically perform its contract by putting the tenant in possession, the landlord would merely be required to desist from interfering while the tenant entered into possession. This is the substantial equivalent of specific performance in a negative form. If it be less, then equity should not refuse relief entirely because the plaintiff has demanded less than it is entitled to.

The Special Term expressed the opinion, also expressed in the prevailing opinion of this court, that mere similarity between the plaintiff's corporate name and the defendant's name as they appear in the caption of the summons and complaint, without allegation or proof of any other facts, is sufficient to establish a case of unfair

competition so conclusively as to require the dismissal of the complaint on the theory of " unclean hands." It is also intimated in the prevailing opinion that this similarity of name was the reason for the defendant's refusal to permit the plaintiff to take possession of the premises. Not only does the complaint not contain such an allegation but it is alleged that both the plaintiff and its assignor have duly performed all the covenants and conditions contained in the lease to entitle the plaintiff to the occupancy of the premises.

I do not agree that mere similarity of name is sufficient to entitle the defendant without interposing any answer or making any proof to a dismissal of the complaint. If it is, then it must be held that a complaint alleging, or proof establishing, that the plaintiff's name is similar to the defendant's name is sufficient without more to justify a judgment for the plaintiff in an action for unfair competition. But mere similarity of name is not decisive on the question of unfair competition or " unclean hands." For aught that we know the defendant may have expressly consented to this use of the name. For aught that appears from the complaint plaintiff might have used the name before the defendant had used it. The nature of the plaintiff's business may be such and it might be conducted in such a manner as not to justify the claim that it is likely to confuse the public. Although the corporate names are similar the plaintiff's business might be conducted under an entirely different name as is often done. These and like considerations cannot be tested on a motion made upon the complaint alone merely because there is an apparent similarity in the names of the parties, but should be reserved for determination upon allegations which properly present the issue. (See Civ. Prac. Act, § 242.) As it is, we are acting upon mere suspicion in dismissing the complaint.

The order appealed from should be affirmed.

Order reversed, with twenty dollars costs and disbursements, and motion granted, with ten dollars costs.